Good morning, Your Honor. Steve Hubachek, Federal Defenders, on behalf of Mr. Zerate Liera. Your Honor, I'm here today to argue that the District Court erred in not suppressing Mr. Liera's statements, both on 3501-slash-McNabb-Mallory grounds and on Miranda grounds. Isn't this issue right now before the Supreme Court? It is, Your Honor. And why shouldn't we defer submission until the Supreme Court hands it down? I realize the client is scheduled to come out fairly soon, September 26, 2009, which might be some reason you'd want a definitive decision now. But wouldn't it make sense to defer submission in this case? I couldn't argue against that. I did send up a 28-J letter on the day that cert was granted in Corley to make sure that the court knew. I appreciate that. But I didn't want to ask it to be taken off because of his upcoming date. But, I mean, if Your Honors think that's the way to proceed. But I don't think there's any reason not to talk about Miranda, since that's not pending in the Supreme Court. So if Your Honors would prefer, I could just address that issue and probably do it in less than the 15 minutes. The Miranda issue, Your Honors, involves the failure of the government in this case to put in the record the warnings that were provided to Mr. Liera. There was a motion made early in the case in March in which the defense moved to suppress, saying it was the government's obligation to prove the Miranda warnings. And that motion was basically denied out of hand by the district court, saying that there's no declaration filed. I'm not going to require anything. I'll do a voluntariness hearing at the trial. And then it said to the government that it could put the Miranda warnings into evidence if it chooses to do so. And it chose not to. So basically, we have a situation where no Miranda warnings were ever put into evidence. The Supreme Court's decision in Tague holds that you can't presume compliance with Miranda. And that's effectively what this is. The district court says you don't submit a declaration, so I'm going to presume effectively that an appropriate set of warnings were given. This court has twice since Tague held that you do have to prove the content of the Miranda warnings in the Taravona case and the Ramirez case. So both of this court's cases have clearly established that the content of those warnings have to be proved. And then the Bland case comes together with Tague, Taravona, and the Ramirez case and provides what the content has to be. And it is each of the critical warnings that are provided for Miranda. Right to remain silent. Right to counsel before and during the interrogation. Right to appointed counsel if you can't afford to retain counsel. So that's what has to be there. And it's not in this record. Now, as great as all this sounds, I do have a problem in the case with respect to the record. And the government pointed it out in their response brief, and I did address it in the reply. But basically we have a weird situation here where defense counsel filed her motion, it was denied out of hand, and then came back for a later hearing on the 3501 issue that we're going to save for another day.  And so she made a couple of statements to the district court in which she said it wasn't really an issue and so on and so forth. And that's at page 209 of the excerpt of record where she says that it doesn't seem to be an issue. But later on in that very hearing, in response to another query from the district court, he said, you know, there is no Miranda motion. And then she kind of realized that maybe that there was. And she told the district court, and I'm quoting from page 228 of the excerpt of record, that she didn't have, quote, her actual first set of motions, close quote. And then she said she was going to take a look at that. And that's at the same page, ER 228. Then the next day she came back for the next hearing and said, you know, I did file the Miranda motion. So to the extent that she said things that tended to undercut the motion, the next day she came back and clarified and explained that she had, in fact, filed that motion. So I don't think that there is a waiver there. And to the extent that there could be a judicial admission, this court in the C-Corp case, I believe it is, and that's 51 Fed Third at 859 to page 60, or 860, said that when you make a statement, in this case it was in a pleading, in a complaint filed in a civil case, you can withdraw that later on and not have that be a judicial admission. And that's what happened here. But even if you hold those statements against her, she never provided to the district court what the content of the Miranda warnings were. So even if you hold those statements against Mr. Liera, they still themselves don't establish what the warnings were. Now, the second problem that I have in the case that was also pointed out in the government's response brief and addressed in the reply, is that during the trial, Mr. Liera actually provided some testimony about the interrogation. And he said that he was told that he had the right to remain silent. He was asked if he was told about the right to counsel, and he couldn't remember. So basically, I think you can hold against me the right to remain silent. That is in the record because he admitted that. But the right to have counsel present before and during the interrogation is not in the record, even taking into account his statements. And then the fact that he's entitled to appointed counsel based upon his financial need is nowhere in the record. So even if you take all the things that the government points to and hold those against Mr. Liera, there is still an insufficient record here to establish the Miranda warnings. And if Your Honors agree with me on that, then the entire, all of the statements have to be suppressed, including the statement or the testimonial act of providing for the code to the telephone, which ultimately led to the Poyos evidence that the government emphasized so heavily in their closing argument. If Your Honors don't have any questions on the merits of that, I would like to briefly turn to the harmless error argument. The government claims that even if the statements are suppressed, the error is harmless. And I think... Is there an issue here about the delay in taking them before a magistrate? Yes. Yes, there is, Your Honor. At Judge Nelson's suggestion, I hadn't addressed that, but I'm happy to address that if Your Honor has questions about that. That's all right. Okay. Well, then, with respect to the harmless error issue, I would urge the Court to rely on the Velarde Gomez and the Foster case. Those are very similar cases, factually. They're both border bus type drug cases. This is a border bus type alien case. But the cases are very similar. The government says that the guy's story is implausible and that he was nervous and so on and so forth. But those same facts occurred in Foster and in Velarde Gomez. This Court said that the testimony that was given at trial wasn't compelling, but it was enough to get by the harmless error analysis performed in those cases. In fact, in Foster, it wasn't even a constitutional harmless error analysis. It was just the more likely-than-not harmful analysis. So I think those cases strongly support our position here. In addition to that, you have a situation where there's nothing about the car itself that would have tipped off Mr. Liera to what was going on. There was actually surprise on his part at page 152 of the external record. The agent actually testified when they opened up the trunk and found the two aliens in there that Mr. Liera indicated or looked like he was surprised. And then finally, the government points out that there wasn't testimony about how the smugglers were actually going to get the aliens back. But in Velarde Gomez, they're actually in the hood, underneath the hood. I'm sorry, but I meant the hood. The agent testified that there was, I guess, a different engine put in this vehicle so that it was smaller, so there was room in there. Certainly not a safe compartment, but that's where they were. Anyway, my last point, Your Honors. At least it was warm. Yes. Yes, it certainly would have been warm, Your Honor. My last point is that even though he didn't testify as to how the smugglers could have gotten the aliens out after he crossed the border, in Velarde Gomez at 269 Fed Third at 1035, this Court said, well, you know, they could have been followed. That's basically the situation here. So even if you don't want to wait for the Supreme Court, I would urge Your Honors to reverse on Miranda grounds and grant a new trial. If I could, I'd reserve the rest of my time for rebuttal. All right.  Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. I'll start my presentation on the Miranda issue. Your Honors, this is a bit of an unusual case, but if there's one time you want to really look to the record to see what happened, it's this case. Defense would have you believe in the reply brief that the many, the multiple, not just one, not just two, but at least three representations by defense counsel that her client and Wade Miranda writes were all part of some mistake, some of this idea that, oh, you know, somehow I'm going to misrepresent clear and easy questions from the district court based on my forgetfulness about filing something. Nothing could be further from the truth, Your Honor. In this case, if you look, March 19, 2007, the defense files a Miranda motion. It's boilerplate, does not attach an affidavit as required by local rule in Southern California in the Southern District, doesn't have any facts. On April 16, 2007, the court says, I don't have a Miranda issue here, no issue has been joined, but they have challenged voluntariness. That's excerpt of record page three. Miranda issue is forgotten about. A couple months later, the parties are in court on the delay of arraignment issue. At excerpt of record 209, the court asks defense counsel, you contend that he did not waive his rights? Ms. Bettencourt, no, he did, Your Honor. A few pages later, excerpt of record 214, the court, there was a second separate Miranda warning given preceding the reinterrogation. Ms. Young, yes, Your Honor. Ms. Bettencourt, who's the defense counsel, yes, Your Honor. And finally, when the court rules on the delay in arraignment issue, at excerpt of record 216, this is its statement. Here there's no dispute that the defendant was given two sets of Miranda warnings and waived Miranda warnings on each occasion. No challenge is being made to voluntary waiver of Miranda rights. Instead, it's all time-based and whether the second interrogation took place within the permitted time. No objection from the defense counsel, no effort to clarify the record. Now, it's true at the end of that hearing there was some discussion about the kind of motions that the defense had filed before. And in particular, Judge Burns was concerned that maybe the reason the defense counsel hadn't filed motions was based on a representation by the prosecutor that they weren't going to introduce certain statements. But none of that confusion was about whether the defendant had waived his rights. And it is true that the next day, and this is at excerpt of record page 138, at the top, the defense counsel says, yes, Your Honor, I did look at my file, and I had originally filed a motion to suppress, as I do in all my cases. I didn't file a declaration, so it was not heard. I don't know where that leaves us. So after she's clarified what defense would now have you believe was this major misunderstanding at the heart of all the prior representations that I just read to you, there's no statement, oh, therefore, Your Honor, I was wrong the three or four times before when I told you that my client waived his rights. Nothing of the sort. And in fact, after that point, after this alleged clarification of the mistake that the defense talks about, you have perhaps the greatest evidence of acquiescence in this case. After, on the same page at the bottom of excerpt of record, page 138, Judge Burns says, I don't have any reason to believe, at least based on what you've told me so far, that there was any defect in the Miranda warnings, or that Mr. Zarate's will was overcome to waive his Miranda rights. Then he says, I'm pardoned, and it has an asterisk, I think he meant the word hardened, by the fact that apparently it's on tape, the Miranda rights and the waiver. Ms. Betancourt, defense counsel. Say that again. He says, I'm heartened by the fact that apparently it's on tape, the Miranda rights and the waiver. And what does Ms. Betancourt, defense counsel, say? It is, Your Honor. Again, absolutely no effort by defense counsel, the client, to withdraw these prior admissions based on some misunderstanding. Let me ask you, is it on the tape? It is. And I'll tell you something, too, Your Honor, it would have been great had the prosecutor put this in, because we wouldn't be talking about this now. But there's a reason that this isn't in the record. When it's not just one, not two, not three, but apparently four, if not five representations by defense counsel. That was on the tape after the six hours had passed. Correct. And I didn't actually look at the tape from before, but because there was no audio, that was the whole problem. You don't know, but it's on the tape afterwards. But the point here, again, Your Honor, don't hold this defect in the record. If you consider it to be one against the government, because what was the prosecutor to do in the face of all these representations? And, in fact, to excerpt a record 140, Mr. Arguello, he was the prosecutor. He has a further colloquy with the court. He says, just to take it a step further from what counsel has stated at the motion hearing, at that motion hearing, the court had denied the Miranda issue because there was no declaration. Judge Byrne says, right. Mr. Arguello then says, counsel stated that there is no Miranda issue. The court told, said, well, there may be a voluntary issue. The court told the government, lay the foundation at trial. Once you've laid that, go sidebar and ask. Again, these are representations by the prosecutor of his understanding that there's no Miranda issue. Defense counsel says nothing. And finally, I would point the court to excerpt of record 141, and this is the end of these quotes. Ms. Bettencourt says, I have a recollection that Mr. Arguello, the prosecutor, before the motion hearing, I asked him if he was introducing statements. He said, no, that's my recollection. And the court then asked, were you prejudiced at all from that? Because he's concerned that maybe she didn't fight Miranda based on that representation. And what does Ms. Bettencourt say? I submitted my other declaration. I think I would move once again to suppress the second set of statements on Rule 5 and 3501, period. No mention of Miranda. If the theory advanced by the defense in the reply brief is true, that this was all some big mistake in understanding, wouldn't that have been the time for defense counsel to say, and guess what, Your Honor, I've got an issue with Miranda. Everybody, the prosecutor, you, have been under the conception for three months now that there are no Miranda issues. I'm here to clarify that. She doesn't say that. So on that record, you can call it their judicial admissions. Defense is bound by them. They can't run away from them on appeal. And they also now, too. Well, how about the reports that these officers filed? Do they refer to Miranda waivers? Your Honor, the reports that they filed, I don't understand that those are in evidence. I didn't look at that. But I have, you know, if you want to ask.  I'm just asking you. The reports I'm not. Between you and me and off the record. I understand, Your Honor. And I wish I had reviewed that portion of the record. What I did look at was the videotape yesterday. And that does have, before the second interrogation, clear warnings. So this issue, I mean. It's not uncommon for these tapes to be followed up. It happens a lot. Which goes to why our reasonableness claim on the prearrangement delay. And that's actually a good segue. And I know Judge Nelson asked. I just wonder why we don't get them good equipment. You know, everybody, even the people who pay for the most expensive things, Your Honor, Circuit City, Best Buy, whatever. Things go wrong. It happens. But in this case, the government made diligent efforts to correct that situation. But I just want to make sure. As far as the Moran issue, then, Your Honor, again, this is very fact intense. This was on video, too, right? Correct. It was. You don't have a lip reader? You know, of all the people that we can employ, I don't believe that we do that, Your Honor. I think the final point I want to say about the Moran issue, though, goes to equity, Your Honor. In this case, not only did the defense, before trial and all these months of motion hearings, give the impression that there was no issue with Miranda. At trial, then, they used offensively, they used affirmatively as a tactic, the fact that the defendant had waived his rights. And that's the colloquy between defense counsel and her client. In supplemental excerpts of record 35 to 36, you waived your Miranda rights, yes. You have an extended colloquy between the lawyer and the client about how cooperative Mr. Lear was. And then you answered a question about the cell phone, yes. You answered this question. You answered that question. Again, supplemental excerpts of record. Now, before 35, before she interviewed you, did she read your rights? Yes. Did she tell you you had the right to remain silent? Yes. It was on. Did you then agree to speak to Officer Figaro? Yes. And did you answer her questions about the car? Yes. Did you answer her questions about where you were living? Yes. Did you answer her questions about where you were going to work? Yes, I did. Your Honors, if you allow basically what the defense is, they want to have their cake and eat it, too. I know that's perhaps an abused cliche and metaphor, but that's exactly what's going on here. Defense didn't care enough about this Miranda issue below to make it an issue with their boilerplate pleading and their failure to introduce an affidavit. They then asked the jury to believe in their client's innocence based on his cooperative, oh, here's my client, he has nothing to hide. They had their go at the jury. They lost. And now on appeal they want to come up and say, oh, guess what? There's bad evidence of Miranda. You know, we had our go over here and lost. Now we want our reversal because there was a problem with Miranda. That's not right, Your Honor. We got your message. I'm done with Miranda. I would like to just say one point about the 3501. If you want to hold this case pending Corley, you can. But I don't think it's necessary. The interesting thing about Corley, I still stand by the position the government does, but this is somewhat of a red herring. Corley, if you look at the dissent by Judge Slovitzer, which is what the defense is hanging their hat so much upon, he's saying come join the view of the Ninth Circuit. The problem with the Third Circuit majority there, as I read that case, was they take on a position that even if you have a delay in excess of six hours, as long as the statement is voluntary based on the totality circumstances, it will never matter how bad that delay is, what the reasons for the delay are. Judge Slovitzer says, I'm dissenting. Here are a few other circuits that don't view the law that way. These other circuits say, notwithstanding other evidence of voluntariness, it is within a district court's discretion, if it finds a delay beyond the six hours that it thinks is unreasonable, to exclude the statements. Here's a circuit, here's a circuit, here's the Ninth Circuit. We already have, we are the Ninth Circuit. What Judge Slovitzer wants to happen in the Third Circuit is the adoption of Ninth Circuit law. As I pointed out in our briefs, notwithstanding the ten-page discussion on all these other circuits, and 3501 in general, and McNabb-Mallory, which has been superseded by 3501. Breyer. Well, I believe that the Supreme Court is going to affirm us. Slovitzer. Well, I believe so. What I'm really saying is I don't think whatever they say will have an effect here, because we've been following this view of the law for decades. That's what the dissent in Corley wants. And that law couldn't be any clearer in this circuit. And it says if you have a delay beyond six hours, the district court may, but is not required to suppress. And what this court looks to, when I do my Westlaw research, whenever I type in 3501, or if I do a six-hour delay search, you see this statement of law time and time again. We will admit statements taken outside the safe harbor if they are reasonable or if public policy favors their admission. I don't believe there's any reason to cloud up the law when the law is clear in this circuit for that long amount of time. And what the defense wants you to buy, they want you to buy this rule of automatic suppression for any delay beyond six hours that's for the purpose of further interrogation. And while further interrogation is, in fact, disfavored as an additional or as a reason for delay, this court has never bought off on any rule of automatic suppression in this context. In fact, what it is is reasonableness. The first argument that was here today, I have no idea what it was about, but it was with immigration. Judge Craigerson said reasonableness, that's the issue of law. Reasonableness permeates the law, particularly in criminal law. And it has always been a totality of the circumstances approach. There are no per se rules. Let's carve out a little category and say if it extends beyond six hours, it has to be excluded. The defense casts aspersions on our brief for trying to avoid their argument or not. If you look at the first quote in the defense reply brief, it tries to give you the impression that in Alvarez-Sanchez, there's a rule of mandatory suppression, it quotes McNabb-Mallory. If you look at that section of Alvarez-Sanchez, it's in the context of a historical discussion of the development of the law. It talks about what McNabb-Mallory held, and then a few paragraphs later says McNabb-Mallory has been superseded by 3501, so we have to look further. And then the Ninth Circuit reviews various approaches. It says look at the Second Circuit and press. Yes, they have a bright line per se rule of rejection. They don't end up following that. And in fact, the Ninth Circuit refers to its opinion in Halbert and says we've often used a balancing test, more often than not, and then between these two approaches, at the end, Alvarez-Sanchez says we don't need to choose between either of them, because on those facts where the government put forward no explanation, the government loses in either case. So if you want to hold it, hold it. You'll do as time, but if you have no further questions, the government submits. Thank you. With respect to the McNabb-Mallory rule, the government keeps saying it's superseded, but this court in Alvarez-Sanchez quoted the Second Circuit, the Perez case, holding that 3501 didn't supersede McNabb-Mallory. It overruled it only with respect to statements made within the six-hour period. Once you get outside the six-hour period, then if you delay for further interrogation, there is a per se suppression rule. The government in their brief cites Van Poyck, which is a case that involved an unavailable magistrate. It cites Padilla-Mendoza, which is a case that involves transportation problems. Well, transportation problems and availability of magistrates are precisely what's dealt with in the exception in 3501C. Those cases have nothing to do with a case like this, where in fact the delay was for the purpose of further interrogation. I can't tell Your Honors how many cases I've lost because Almendarez-Torres is not overruled, despite the fact that it's been roundly criticized. I don't know why McNabb-Mallory doesn't enjoy the same status. The Supreme Court has never overruled that line of cases. Maybe they will in Corley, who knows? But they have never overruled that line of cases. 3501C, not one word of it says McNabb-Mallory is overruled. And if you trace the legislative history of 3501C, you'll see that that in fact was the idea that the senator who actually sponsored the legislation had. He proposed a statute that would overrule entirely 3501C. And then there was debate, there was compromise, there was the fact that Congress had recently passed a 3501C-type statute in the District of Columbia that set out a three-hour safe harbor. And they decided that three hours was too short, so they increased it to six hours. So there's no overruling of McNabb-Mallory, and this Court has never held that. In fact, as Mr. Rahe says, Alvarez said, we don't have to reach that because we should suppress on either grounds. He also said that delay for further interrogation is disfavored, disfavored. Well, I think Wilson is actually a little bit stronger than that. Wilson says that it is the most unreasonable excuse possible for a delay of arraignment. So everything that Mr. Rahe said about statements that are taken after a delay for the purpose of interrogation are wrong. McNabb-Mallory still exists when you take a statement outside the six-hour rule. Why is that a waiver of Miranda rights that you're so passionate about? Well, I'm passionate about all these issues, Your Honor. But, you know, I said to Your Honors, you know, I told you what my problems were when I was up here arguing the first time. And I also told you that, you know, if Mr. Rahe gets up and argues those, you have to remember that there is no statement in this record where a defense counsel said here's what the content of the waiver was or here's what the content of the warnings were. There is still no evidence in this record, no matter what admissions you attribute to her, that say what the warnings were, no matter how much they complain. And for Mr. Rahe to suggest that, you know, the government didn't know that there was a ---- It's all right. It goes on and on and on. But it's not an issue. It's not an issue. It's not an issue. But you don't need to spend any more time on it. Okay. If I could just make one more point, which is that, you know, for the suggestion that nobody knew that there was an issue, there's a motion filed. It's at page 240 to 243. She said that the local rule is unconstitutional. She said that the government has to prove this. And she said that the district court should suppress. So to say that there was no issue is simply wrong. Yeah, okay. All right. Thank you, Your Honors. Thank you. And now we come to U.S.
judges: Pregerson, Nelson, Thompson